## HARRIMAN NAT. BANK v. SELDOMRIDGE.

(Circuit Court of Appeals, Second Circuit.   February 8, 1917.)

No. 159.

1. BANKS AND BANKING ⟨⬤⟩133—LIABILITY TO DEPOSITOR—TRANSFER WITHOUT AUTHORITY.

The cashier of a bank, corresponding in the name of the president, who was his father, borrowed from a correspondent bank in another city a sum of money on the joint note of himself and his father secured by collateral, a portion of which was forged by the cashier. Thereafter the cashier made a deposit slip, showing a deposit in his bank by his father of the amount of the loan by check on the correspondent bank. On being informed that his bank's account with the correspondent bank had been overdrawn, he instructed the latter to place the proceeds on the note then standing to the credit of his father to the bank's credit, which was done, and the amount was carried to the bank's credit for a month. On being informed by the president of the resignation of the cashier, the correspondent bank, without instruction, charged the amount of the note against the bank and credited the president's personal account with it, and thereafter charged the note against that credit. The receiver of the depositor bank brought action against the correspondent bank to recover that amount. *Held*, that the receiver was entitled to recover, there being no mistake or misunderstanding shown as to the account, since a bank cannot discharge its liability to account with the depositor to the extent of the deposit, except by the payment to him, or to the holder of a written order from him.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 339-352.]

2. BANKS AND BANKING ⟨⬤⟩116(6)—REPRESENTATION BY OFFICER—KNOWLEDGE OF OFFICER—INTEREST ADVERSE TO BANK.

The knowledge by a bank cashier of the forgery by him of collateral for a loan, the proceeds of which were credited to the bank, is not to be imputed to the bank, since it was to the cashier's interest to conceal the forgery.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 287.]

3. APPEAL AND ERROR ⟨⬤⟩997(3)—REVIEW—DIRECTION OF VERDICT—MOTION BY BOTH PARTIES.

Where both parties moved for direction of a verdict, there was no substantial question of fact to be decided, and, if the law was correctly applied by the trial judge, the judgment must be affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4024.]

In Error to the District Court of the United States for the Southern District of New York.

Action by Harry H. Seldomridge, as receiver of the Mercantile Bank of Pueblo, Colo., against the Harriman National Bank. Judgment for the plaintiff on directed verdict, and defendant brings error. Affirmed.

A judgment for $32,100 damages was entered by direction of the court in favor of the defendant in error, who was the plaintiff below. The parties will be referred to hereafter as they appeared in the District Court, viz., as plaintiff and defendant.

⟨⬤⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Wesselman & Kraus, of New York City, for plaintiff in error.

Barber, Watson & Gibboney, of New York City (Stuart G. Gibboney and George M. Burditt, both of New York City, of counsel), for defendant in error.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

COXE, Circuit Judge. [1] On January 28, 1915, a letter purporting to be signed by W. B. Slaughter stating that he was the president of the Silverton National Bank, at Silverton, Colo., was sent to J. W. Harriman, president of the Harriman National Bank of New York stating that he (Slaughter) wished to buy the control of the only other bank at Silverton, viz., the First National. In order to make this purchase he stated that he "would require for about 60 days $25,000 or $30,000." This letter was signed W. B. Slaughter, with a rubber stamp. On February 1, 1915, the Harriman National Bank telegraphed Slaughter:

"Letter received. Will accommodate you to extent thirty thousand dollars for sixty days, upon security and joint note yourself and C. C. Slaughter when you need it. Letter follows."

On February 6, 1915, all the stock of the First National Bank of Silverton was purchased from M. D. Thatcher and a check for $35,000 on the Mercantile National Bank was given in part payment therefor. This check was signed "W. B. Slaughter by C. C. Slaughter." In order to meet this check, C. C. Slaughter handed in a deposit slip of which the following is a copy:

Deposited with Mercantile National Bank of Pueblo by W. B. Slaughter
2–8–16.

Enter all checks separately with name of bank drawn on

|  | Dollars | Cents |
|---|---|---|
| Currency |  |  |
| Gold |  |  |
| Silver |  |  |
| Checks |  |  |
| Harriman | 30,000 |  |
| Total $ | 30,000 |  |

C. C. Slaughter is the son of W. B. Slaughter and was cashier of the bank. W. B. Slaughter was engaged in the cattle business. On February 7th, C. C. Slaughter wrote to Joseph W. Harriman, president of the Harriman National Bank, a letter signed W. B. Slaughter, in which he says:

"I am herewith handing you the note, dated February 10, properly signed by myself and C. C. Slaughter and also inclose five hundred shares of the capital stock of the Mercantile National Bank and also four hundred shares of the First National Bank of Silverton, Colorado. Will ask you to kindly place the proceeds of this note to my credit. If for any reason this note is not satisfactory, kindly wire as I am drawing on the funds on Monday. * * * In fact, it will take us in all probabilities at least thirty days before we can consolidate the two banks."

The note was discounted by the Harriman National Bank and the proceeds placed to the credit of W. B. Slaughter on February 10, 1915.

On February 17th, the Harriman Bank telegraphed to the Mercantile Bank of Pueblo, Colorado, as follows:

"Checks presented your account appears to be overdrawn $8,000. Have you remitted to cover overdraft? Slaughter's personal balance is $30,000. Did you intend to loan proceeds for credit bank, wire."

In reply a telegram was sent dictated by C. C. Slaughter as follows:

"Place thirty thousand personal account W. B. Slaughter our credit.
                                                            "Mercantile National Bank."

On receipt of this telegram the Harriman Bank transferred $30,000 from the account of W. B. Slaughter to the account of the Mercantile Bank and asked for confirmation of authority to do so. This was answered by a letter dated February 22d and was signed "C. C. Slaughter, Cashier." On March 23, 1915, a telegram was received by the Harriman Bank signed W. B. Slaughter as follows:

"Cancel authority C. C. Slaughter as an officer this bank as of date to-day resigned."

On March 25th the assistant cashier of the Mercantile Bank telegraphed to the Harriman Bank asking for a statement of account. On March 26th, the Harriman Bank telegraphed to W. B. Slaughter as follows:

"W. B. Slaughter, President, Mercantile National Bank, Pueblo, Colorado.

"We credited your personal account thirty thousand dollars February tenth proceeds of loan. Under instructions from C. C. Slaughter February eighteenth we charged your personal account and credited account Mercantile National Bank with this thirty thousand dollars. Inasmuch as we have not received confirmation and instructions from you personally as requested we have this day charged Mercantile National Bank thirty thousand dollars and hold the amount out of their account and in our sundry account subject to adjustment of which please take note. Balance of Mercantile National Bank after this deduction is twenty three thousand dollars off.
                                                "Harriman National Bank,
                                                    "John A. Noble, Cashier."

On March 30th, the note of W. B. Slaughter and C. C. Slaughter was charged against the credit of $30,000 held in the sundry account by the Harriman Bank. It appears from the Harriman Bank statement that the transfer of $30,000 to the credit of the Mercantile Bank was in part withdrawn. It also appears that the Harriman Bank had been doing business with the Mercantile Bank for at least three years and that at the close of business on March 25, 1915, there was a balance to the credit of the Mercantile Bank on the books of the Harriman Bank of over $53,000. If that sum, or any part thereof, was removed or misapplied, without authority from the Mercantile Bank, the receiver of that bank is entitled to recover. The Mercantile Bank never gave any orders, oral or written, which authorized the withdrawal of this fund.

On March 29th, the bank examiner in charge of the Mercantile Bank telegraphed to the Harriman Bank announcing the suspension of the Mercantile Bank. On the next day the Slaughter note was charged against the credit of $30,000. This would seem to have been

240 F.—8

done without authority or right and was an arbitrary unauthorized act.

"The bank cannot discharge its liability to account with the depositor to the extent of the deposit, except by payment to him, or to the holder of a written order from him, usually in the form of a check." Leather Bank v. Merchants' Bank, 128 U. S. 26, 34, 9 Sup. Ct. 3, 4, 32 L. Ed. 342.

There was no mistake, confusion or misunderstanding about this $30,000 balance. It was expressly acknowledged by the Harriman Bank in its February statement. When and by what process did the Mercantile Bank lose the benefit of this credit? We are unable to find that it did lose this benefit.

[2] It is further urged by defendant that there was fraud in the negotiation of the loan by defendant to the Slaughters. This is true, as C. C. Slaughter deliberately forged a portion of the collateral attached to the note discounted by the Harriman Bank. It is also true that when the proceeds of that loan were transferred from the credit of W. B. Slaughter to that of the Mercantile Bank, the order for transfer was given by C. C. Slaughter as cashier of the Mercantile Bank; the same man who in his private capacity had perpetrated the fraud upon the defendant. On these admitted facts defendant urges that even if the transfer of credit from W. B. Slaughter to the Mercantile Bank was upon good consideration, the knowledge of fraud possessed by C. C. Slaughter must be imputed to the Mercantile Bank.

As the Mercantile Bank innocently paid out $35,000 on the faith of the expected transfer on the books of the Harriman Bank, we think the consideration too obvious for discussion. As to the imputation to the Mercantile Bank of C. C. Slaughter's knowledge of his own fraud, it was evidently to the latter's interest to conceal that knowledge, if he expected, as he obviously did, to be able to carry out the Silverton Bank transaction. Therefore what C. C. Slaughter knew is not to be imputed to the Mercantile Bank. The subject was sufficiently treated in our recent opinion in the Matter of the United States Hair Co., 239 Fed. 703, —— C. C. A. ——.

[3] As both parties hereto moved for the direction of a verdict there was no substantial question of fact to be decided. The law was correctly stated and applied by the trial judge, and the judgment is affirmed with costs.